THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
DEBORAH WARING, Appellant.

Second Department, January 13, 1992

**APPEARANCES OF COUNSEL**

*Philip L. Weinstein (Robert L. Abell* and *Richard Joselson* of
counsel), for appellant.

*Richard A. Brown, District Attorney (Anna Seminerio* of counsel), for respondent.

OPINION OF THE COURT

BRACKEN, J.

The defendant argues that the warrantless search of a package, which had been seized from her person after she had attempted to smuggle it through an airport security checkpoint, was unconstitutional, and that the contraband discovered during the course of that search, therefore, must be suppressed (US Const 4th, 14th Amends; NY Const, art I, § 12; *Mapp v Ohio,* 367 US 643). The defendant argues that neither the consent nor the emergency exception to the warrant requirement may be applied, and that no other exception is available. As did the hearing court, we hold that neither the consent nor the emergency exception need be invoked in order to justify the warrantless search of a package, the presence of which is discovered during an airport security checkpoint search, and the contents of which, it is reasonably suspected, might include a weapon or explosives.

On December 13, 1988, at approximately 5:00 P.M., the defendant presented herself at a screening point located within the Delta Airlines terminal at LaGuardia Airport in New York. The defendant passed routinely through a magnetometer, that is, an "archway which [detects] any metal". The magnetometer was activated upon the defendant's first passage through. After she had been given two opportunities to remove various metal objects from her person, the defendant passed through the magnetometer a second time, and then a third time, and the magnetometer was activated on each try.

The defendant then consented to undergo a manual search, which was conducted by a private security guard with the use of a "hand wand". During the course of this manual search, a Port Authority police officer observed a bulge under the defendant's sweater, protruding from the small of her back. The officer, alert to the "possible risk of a bomb [or] a gun" conducted an immediate pat-down search and recovered a package which was approximately six inches by five inches by three inches in size.

After the seizure of the package, the defendant consented to accompany the officer to a security room. The defendant initially claimed that the package contained money which belonged to another individual, and that she had been in-

structed to allow no one to open it. The package was placed on a table in the security room while a further hand search of the defendant proved to be negative for weapons.

A second police officer arrived at the security room sometime later. This officer requested permission to open the package. Although the present record supports the conclusion that the defendant, after an initial refusal, gave her consent, the hearing court, in its decision, made no express finding that the defendant in fact consented to the opening of the package. The search of the package revealed the presence of a white powdery substance which a field test proved to be cocaine, and was followed by the defendant's arrest.

The hearing court denied a subsequent motion to suppress the cocaine and statements made by the defendant to the Port Authority police officer. As noted above, the court did not expressly rely on the consent exception to the warrant requirement, although the weight of the evidence would have supported a conclusion that the search of the defendant's package was legal for this reason. Nor did the court find it necessary to determine whether "the facts as they unfolded were sufficient to establish the emergency exception [to the warrant requirement]". Instead, the hearing court essentially held that the search of the defendant's package was lawful because it was reasonable under all of the circumstances (citing *United States v Edwards,* 498 F2d 496 [2d Cir]; *United States v Albarado,* 495 F2d 799 [2d Cir]; *United States v Kroll,* 481 F2d 884, 886 [8th Cir]; *United States v Mitchell,* 352 F Supp 38 [ED NY], *affd* 486 F2d 1397).

On appeal, the defendant argues that the fact that the search of her package might have been reasonable under all of the circumstances does not render it lawful. She argues that the consent exception to the warrant requirement is unavailable because the People failed to urge this theory in the Supreme Court and because the Supreme Court itself did not rely on this theory. She also argues that the emergency exception is inapplicable *(see generally, People v Mitchell,* 39 NY2d 173, 177-178, *cert denied* 426 US 953; *People v Smith,* 135 AD2d 190). Because we agree with the analysis employed by the hearing court, we affirm.

The defendant is incorrect in asserting that the present search may be upheld only by application of either the consent or the emergency exception to the warrant requirement. The rules which define the extent of those two exceptions to

the warrant requirement have broad applicability to all persons or places searched and to all persons or things seized. It is clear from a review of the relevant case law that searches and seizures which occur at airport security checkpoints are to be examined in light of special rules which have evolved in response to the "jeopardy to hundreds of human lives and millions of dollars of property inherent in the pirating or blowing up of a large airplane" *(United States v Bell,* 464 F2d 667, 675 [2d Cir, Friendly, Ch. J., concurring], *cert denied* 409 US 991). Searches which occur at airport security checkpoints are not, in other words, governed by the same standards as would be applied to searches conducted on the street, or in any other public or private place.

Courts have approved of the searching of carry-on luggage and the frisking of airline passengers on several theories. One theory is premised on the view that any passenger who attempts to board an aircraft or to enter a "sterile" area within an airport, implicitly consents to a full search of his or her person and effects. Pursuant to this theory, a search of carry-on luggage may be justified even in the absence of any reasonable suspicion, much less probable cause, to believe that the package in question might contain a weapon *(see, e.g., People v Heimel,* 812 P2d 1177 [Colo]; *State v Kelsey,* 67 Ore App 554, 679 P2d 335; *cf., State v Wiley,* 69 Haw 589, 752 P2d 102; *State v Salit,* 613 P2d 245 [Alaska]). This implied consent theory evolves naturally from the simple realization that " '[i]t is common knowledge that all airline passengers and their luggage are subject to being searched' " *(People v Brown,* 113 AD2d 893, 894, quoting *People v Price,* 54 NY2d 557, 563; *see also, People v Ross,* 157 AD2d 808).

Another theory is premised on application of the administrative search exception to the warrant requirement *(see, e.g., United States v $124,570 U.S. Currency,* 873 F2d 1240 [9th Cir]; *United States v Davis,* 482 F2d 893; *State v Cornwall,* 810 P2d 484 [Utah]; *State v Wiley, supra; State v Salit, supra).* This theory is founded on the fact that Federal regulations *(see, e.g.,* 14 CFR 107.1 *et seq.; see also,* 14 CFR 121.538) require airport operators to maintain appropriate security programs *(see, People v Heimel, supra).* Observance of these regulations has engendered the widespread practice of conducting warrantless searches of carry-on luggage at United States airports, searches which "[m]ore than a million Americans subject themselves to * * * daily" *(United States v Edwards,* 498

F2d 496, 500, *supra)*, and which have become part of daily life, involving no stigma.

The Supreme Court of the United States, citing cases such as *United States v Edwards (supra)*, *United States v Skipwith* (482 F2d 1272 [5th Cir]), and *United States v Davis (supra)*, has stated that, in light of the Federal Government's practice "of requiring the search of all passengers seeking to board commercial airliners, as well as the search of their carry-on luggage * * * the lower courts that have considered the question have [by applying the administrative search exception] consistently concluded that such searches are reasonable under the Fourth Amendment" *(Treasury Employees v Von Raab*, 489 US 656, 675, n 3). The court also noted that in the five years since the Federal Government began requiring such searches, more than 9.5 billion persons have been screened and more than 10 billion pieces of luggage have been inspected *(Treasury Employees v Von Raab, supra)*. In light of these facts, it is difficult to see how anyone could assert a reasonable expectation of privacy in a package which is being brought onto an airplane or through an airport sterile area.

A third theory is premised on an analogy to the "border search" exception to the warrant requirement *(see, e.g., United States v Cyzewski*, 484 F2d 509, *cert dismissed* 415 US 902; *see also, United States v Moreno*, 475 F2d 44, *cert denied* 414 US 840; *United States v Herzbrun*, 723 F2d 773; *United States v Skipwith, supra* [justifying searches based on mere suspicion]). This theory may not be applicable in all cases. Generally, it is the nature of the means of the travel (i.e., by airplane rather than by car or by foot) rather than the nature of the destination of the travel (foreign rather than domestic) which intensifies the concern for the traveler's safety. The historic reasons for exempting border searches from the warrant requirement *(see, Almeida-Sanchez v United States*, 413 US 266, 272 [" 'national self protection' " cited as basis for border search exception]; *Carroll v United States*, 267 US 132, 154), in other words, do not closely resemble the contemporary reasons for exempting domestic airport searches from that requirement. Nevertheless, employment of the border search analogy, in practice, leads to results consistent with those reached based upon other theories as previously outlined.

The search which was conducted in the present case is valid under any one of these theories. The officers had the right to open the defendant's package without her consent. Her claim that it contained money did nothing to explain why appar-

ently it had activated the magnetometer, which detects metal. At the time it was opened, the defendant's package had been identified as the only object which could have caused the magnetometer to sound a warning. The officers had near-certain knowledge that the package, which the defendant had obviously attempted to conceal while passing through the magnetometer, contained some metallic object. The officers also had, at the very least, a reasonable suspicion that the metallic object contained in the package was a bomb or a gun.

Under these circumstances, we need not decide whether the warrantless search of the defendant's carry-on luggage or person could have been upheld even in the absence of any suspicion that she possessed a weapon or explosives solely on the grounds that the defendant presented herself at the checkpoint while carrying that luggage. In other words, we need not decide whether the implied consent rationale, to the extent it can be said to eliminate the requirement of reasonable suspicion, ought to be adopted. We hold only, as have nearly all other courts, regardless of the exact approach taken, that airport checkpoint security searches may be conducted without a warrant provided that they are only so intrusive as is reasonable in light of all the circumstances, including the overriding State interest in preventing aircraft hijacking *(see, Santiago v State,* 50 Md App 20, 435 A2d 499; *see also, United States v McKennon,* 814 F2d 1539 [11th Cir]; *United States v Pulido-Baquerizo,* 800 F2d 899 [9th Cir]; *United States v Lopez-Pages,* 767 F2d 776, 779 [11th Cir]; *United States v Clay,* 638 F2d 889 [5th Cir], *cert denied* 451 US 917; *United States v DeAngelo,* 584 F2d 46 [4th Cir], *cert denied* 440 US 935; *Spezialy v State,* 661 P2d 1095 [Alaska]; *Shapiro v State,* 390 So 2d 344 [Fla], *cert denied* 450 US 982; *State v Perez,* 509 So 2d 1287 [Fla]; *State v Campanponi,* 424 So 2d 163 [Fla]; *Oishi v State,* 400 So 2d 480 [Fla]; *see generally,* 4 LaFave, Search and Seizure § 10.6 [2d ed]; 2 Ringel, Searches & Seizures, Arrests and Confessions § 16.2 [2d ed]). This, in fact, was our holding in *People v Rivera* (141 AD2d 572), where a warrantless security checkpoint search of the defendant's attaché case was upheld on the ground that it was reasonable in light of the suspicion that the defendant might be armed *(see, People v Rivera, supra,* at 573).

The defendant relies on certain dicta from the Court of Appeals decision in *People v Kuhn* (33 NY2d 203, 210) in support of her argument that the search of her package was illegal in the absence of consent. In that case, the court stated

that a single positive reading on an airport magnetometer, indicating the presence of metal, would not automatically authorize a further personal search *(see, People v Kuhn, supra,* at 210). In the present case, the magnetometer was not only triggered three times, but a suspicious bulge was observed concealed under the defendant's sweater prior to its seizure and subsequent search. The statement excerpted above, which, it should be noted again, was not essential to the holding of the court in *Kuhn* does not, therefore, control the outcome of this case.

Our decision in *People v Smith* (135 AD2d 190, *supra)* is also distinguishable. The package, the search of which this court held illegal in the *Smith* case, had been delivered for shipment by airfreight, and was intercepted while it was being processed through an airport. An X-ray search of the package revealed nothing metallic *(People v Smith, supra,* at 192). There was no apparent basis to support a belief that the package contained an explosive device, other than the fact that a "terrorist alert" of vague significance had been issued, coupled with the fact that no rattling was heard when the package was shaken. Under these circumstances, the court held that the "emergency" exception to the warrant requirement did not apply. The present case is distinguishable most obviously in that the package in question did appear to contain a metallic object. For this and other reasons, it is clear that the suspicion that the package in the *Smith* case might contain a weapon or a bomb was significantly less reasonable than the similar suspicion entertained by the officers in the present case.

Finally, and perhaps most significantly, the issue presented to this court in the *Smith* case involved the "emergency" doctrine only *(People v Smith,* 135 AD2d 190, 191, *supra).* In the present case, the Supreme Court upheld the search of the package without recourse to this "limited exception" *(People v Smith, supra,* at 191). As outlined above, we agree with the Supreme Court that the search of the defendant's package may be justified without resort to the emergency exception. This, of course, is not to be taken as an expression of an opinion that the emergency exception does not apply. Whether the emergency exception to the warrant requirement could properly be applied in order to validate the search which

occurred in this case is, in other words, a question which we need not, and do not, decide.

We have examined the defendant's remaining contention, and find it to be without merit.

THOMPSON, J. P., SULLIVAN and LAWRENCE, JJ., concur.

Ordered that the judgment is affirmed.