■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WAYNE X. BROWN, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Queens County (Rubin, J.), rendered May 11, 1977, convicting him of criminal possession of a weapon in the third degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of defendant's omnibus motion which sought to suppress physical evidence.

Judgment affirmed.

On the evening of July 12, 1976, at approximately 7:00 P.M., defendant, while carrying a garment bag and a small black briefcase, attempted to walk through a magnetometer located in the Eastern Airlines security screening area at LaGuardia Airport. He was stopped by Helen Dixon, a supervisor of security, and was informed that he would have to let his bags pass through an X-ray scanning machine. Two signs located in the searching area, one posted on the X-ray device itself, warned passengers that their baggage was subject to search.

Defendant turned over his luggage to Dixon and, as it passed through the X-ray machine, Dixon observed the outline of a gun in the briefcase. She rescreened the bag and again observed the outline of what appeared to be a gun. She then summoned Port Authority Police Officer Clifford Barry, who also saw the outline of a gun as the briefcase was placed through the machine for a third time. The briefcase was opened and a white towel was found inside. Officer Barry unrolled the towel and found a revolver with four rounds of ammunition inside. After finding out that defendant neither had a gun permit nor was a police officer, Barry placed him under arrest. Dixon then noticed another white cloth in the open briefcase. She unwrapped it and found some needles, cellophane paper and other paraphernalia which she handed over to a second police officer.

Defendant maintains on appeal that the X-ray search was unlawful in that there is insufficient evidence to prove that he had knowledge of the impending X-ray search or of his right to refuse consent. The prosecution was not required to demonstrate defendant's knowledge of a right to refuse as a prerequisite to establishing voluntary consent *(see, Schneckloth v*

*Bustamonte,* 412 US 218, 249; *People v Kuhn,* 33 NY2d 203, 208-209), and there is ample evidence on this record to prove that defendant was fully apprised of the X-ray search and that he voluntarily consented thereto. Two signs clearly forewarned passengers of the X-ray search, and we find no evidence of coercive tactics or arbitrariness in the security procedure used *(People v Kuhn, supra,* at p 208). Furthermore, "[i]t is common knowledge that all airline passengers and their luggage are subject to being searched and that these searches, although devised to protect against hijackings, are reasonable even when contraband is discovered in areas where a person would normally have a reasonable expectation of privacy" *(People v Price,* 54 NY2d 557, 563). Given the evident danger to the public, the overwhelming governmental interest and the minimal invasion into personal privacy, we hold that the X-ray search was reasonable and constitutionally permissible *(People v Kuhn, supra,* at p 210; *United States v Smith,* 643 F2d 942, 944-945, *cert denied* 454 US 875).

Finally, we note that in denying suppression, Criminal Term failed to make findings of fact as required by CPL 710.60 (4), (6). Defendant's contention that this requires reversal is without merit, since the record of the hearing is sufficient for this court to make such findings *(People v Le Grand,* 96 AD2d 891, 892; *People v Acosta,* 74 AD2d 640). Mollen, P. J., Bracken, Brown and Rubin, JJ., concur.