34 P.3d 1

STATE of Hawai'i, Respondent/Plaintiff–Appellant,

v.

William HANSON, Petitioner/Defendant–Appellee.

No. 22847.

Supreme Court of Hawai'i.

Nov. 2, 2001.

As Amended Nov. 7, 2001.

Caroline M. Mee, Deputy Prosecuting Attorney, City and County of Honolulu, for plaintiff-appellant, on the briefs.

Hayden Aluli, for defendant-appellee, on the briefs.

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, and ACOBA, JJ.

### Opinion of the Court by ACOBA, J.

We hold that when an airline passenger consents to a search of his or her effects at an airport security checkpoint, the scope of the search reasonably extends to those receptacles, the contents of which cannot be identified, contained in luggage. We thus affirm the May 14, 2001 decision of the Intermediate Court of Appeals (ICA) [1] reversing the August 26, 1999 order of the district court of the first circuit (the court) suppressing, as evidence, a gun contained in a bag found in the luggage of Petitioner/Defendant–Appellee William Hanson (Petitioner). *See State v. Hanson*, 97 Hawai'i 77, 34 P.3d 7 (App.2000).

### I.

The court's findings reflect that on June 11, 1999, Petitioner was scheduled to fly from Honolulu, O'ahu to Kailua–Kona, Hawai'i on Hawaiian Airlines. Petitioner arrived at the Hawaiian Airlines ticket counter with a large amount of luggage including a wooden toolbox. Frederick Garringer, a Honolulu Airport security officer,[2] examined Petitioner's toolbox on an "x-ray" machine but was unable to identify everything within the toolbox.

Petitioner allowed Garringer to search his toolbox and in fact opened the combination lock on the box. In the box was a tan plastic bag wrapped in duct tape but the bag's contents could not be identified. Garringer testified that he sought Petitioner's permission to search the bag; Petitioner claimed otherwise. As to this matter, the court found Petitioner's testimony more credible. Garringer opened the plastic bag and discovered a second plastic bag containing a white cardboard box. From the box, Garringer recovered a black handgun.

On June 11, 1999, Petitioner was charged with failing to register a firearm, Hawai'i Revised Statutes (HRS) §§ 134–3(a)' (1993) and –17(b) (Supp.2000).[3] On July 9, 1999, Petitioner moved to suppress all evidence obtained as a result of the search. At a hearing held on August 23, 1999, the motion was orally granted. In its oral decision, the court referred to *State v. Wiley*, 69 Haw. 589, 752 P.2d 102 (1988), which it believed applied to the instant case. On August 26, 1999, the court filed its written findings of fact, conclusions of law, and order granting Petitioner's motion.

In its written conclusions, the court ruled that

> a warrantless search of items ... in which a defendant has a legitimate expectation of privacy is presumptively unreasonable....
>
> ....
>
> ... A search conducted pursuant to voluntary and uncoerced consent ... is one of the exceptions to the warrant requirement. Such an exception is applicable ... if the right ... is waived....
>
> ... [Petitioner] consented to the search of his toolbox....

---

1. Associate Judge Daniel R. Foley authored the opinion of the ICA, and was joined by Chief Judge James S. Burns and Associate Judge John S.W. Lim.

2. Garringer was employed by International Total Service (ITS), a security company. Garringer was unaware of whether ITS had a security contract with the airport or with Hawaiian Airlines. In any event, Respondent/Plaintiff–Appellant State of Hawai'i does not contend that Garringer was working other than as an agent of the government at the time he searched Petitioner's toolbox.

3. HRS § 134–3(a) (Supp.2000) reads, "[e]very person arriving in the State who brings or by any other manner causes to be brought into the State a firearm of any description ... shall register the firearm within three days after arrival of the person or of the firearm[.]" HRS § 134–17(b) (Supp.2000) explains that "[a]ny person who violates section 134–3(a) shall be guilty of a petty misdemeanor."

... However, under the totality of circumstances ... [Petitioner] did not ... consent to the search of the plastic bag ... [or] voluntarily waive his right to be free from unreasonable searches and seizures.

(Citations and internal quotation marks omitted.)

## II.

The ICA vacated the court's August 26, 1999 findings of fact, conclusions of law, and order, and remanded the case for further proceedings. *See* 97 Hawai'i at 78, 34 P.3d at 8. It did not evaluate any of the court's findings of fact. However, the ICA did say, with respect to the court's conclusions of law, that "no authority in the oral or written conclusions of the district court ... supports its order[.]" Op. at 86, 34 P.3d at 16. It determined that Petitioner "consented to the x-ray screening and manual search of his toolbox" and "[b]y consenting to this process, [Petitioner] implicitly consented to a hand search of an item in a tan plastic bag where the x-ray scan was inconclusive[.]" Op. at 83, 34 P.3d at 13. In distinguishing *Wiley*, the ICA said the search there was unreasonable because at the time it took place "[the d]efendant was already under arrest and his belongings safely immobilized under the control of law enforcement officers." Op. at 86, 34 P.3d at 16 (quoting *Wiley*, 69 Haw. at 591, 752 P.2d at 103).

In arriving at its holding, the ICA: (1) believed that the search did not violate Petitioner's "reasonable expectation of privacy under the fourth amendment" to the United States Constitution,[4] op. at 82, 34 P.3d at 12

(citing *United States v. Pulido-Baquerizo*, 800 F.2d 899, 901 (9th Cir.1986), and *People v. Heimel*, 812 P.2d 1177, 1181 (Colo.1991)); and (2) apparently concluded that the search would not contravene article I, section 7 of the Hawai'i Constitution.[5] *See* op. at 85, 34 P.3d at 15.

## III.

On June 13, 2001, Petitioner filed his application for certiorari. In it, Petitioner contends the ICA: (1) wrongly "overruled" *Wiley*;[6] (2) violated the rule that "a warrantless search of items, such as a closed, opaque package in which a defendant has a legitimate expectation of privacy, is presumptively unreasonable"; (3) "adopted the rationale that an airline traveler implicitly consents to a 'limited hand search of luggage' without any facts in the record ... about prior notice to Hawai'i travelers"; (4) cited federal and state regulations and state statutes that were not relied upon by the parties below in establishing that "[t]he search of [Petitioner]'s toolbox by Garringer appears to have been pursuant to a screening system adopted by Hawaiian Airlines as mandated by FAA regulation ...."; (5) ignored "[t]he court['s finding] ... that [Petitioner] did not freely and voluntarily consent to the search of the plastic bag found within his toolbox"; and (6) overlooked "[t]he Hawai'i Supreme Court['s] ... willingness to afford greater protection of individual rights than is provided on the federal level." In light of Defendant's objections, we granted certiorari to clarify the basis for upholding airport security searches.

## IV.

As to Petitioner's citation to *Wiley*, we believe that case to be inapposite. Petitioner

---

4. The fourth amendment to the United States Constitution states:

   The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

5. Article I, section 7 of the Hawai'i Constitution states:

   The right of the people to be secure in their persons, houses, papers and effects against un-

reasonable searches, seizures and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized or the communications sought to be intercepted.

6. Petitioner also maintains "even if the ICA did not implicitly overrule *Wiley*, its failure to at least cite to it raises a clear inference that it inadvertently overlooked *Wiley*."

apparently relies on the statement in *Wiley* that this court "do[es] not believe that by submitting luggage to an airport screening search, [a defendant] irrevocably relinquishe[s] his [or her] constitutional right to be free from unreasonable searches that fall outside the limited scope of such a screening." 69 Haw. at 592–93, 752 P.2d at 104. The basis for affirming suppression of the contraband in *Wiley,* however, rested not on any airport security measures taken, but on the unreasonableness of the warrantless search that followed *after* the defendant had been arrested and his belongings subjected to the control of the police:

> [O]nce a defendant is placed under arrest, and his [or her] belongings relinquished to police control, the justification for an airport security search cannot be used to circumvent the well-established constitutional protections of search and seizure law.
>
> . . . .
>
> . . . [Thus, o]nce [the d]efendant was placed under arrest, and his belongings placed under the complete control of law enforcement officers, any further search was required to meet the constitutional provisions of the warrant requirement or fall within one of its exceptions. Therefore, the circuit court's order suppressing the use of contraband recovered from the search of the pillow as evidence is affirmed.

*Id.* Contrastingly, Petitioner was not under arrest at the time of the search and had consented to the search. *See* discussion in section V, *infra.*

▮▮▮▮ As Petitioner points out in connection with his second point, this court has held that a warrantless search of a closed opaque package in which a defendant has a legitimate expectation of privacy is presumptively unreasonable. *See State v. Wallace,* 80 Hawai'i 382, 390, 400, 910 P.2d 695, 706, 713 (1996) ("[A]ny warrantless search of a constitutionally protected area is presumptively

unreasonable," and, "[a]s a general proposition, the Fourth Amendment to the United States Constitution provides protection to the owner of every container that conceals its contents from plain view." (Brackets and citations omitted.)) However, we have determined that warrantless searches at airport security checkpoints do not offend either the fourth amendment or the Hawai'i Constitution. *See Nakamoto v. Fasi,* 64 Haw. 17, 24, 635 P.2d 946, 953 (1981), and discussion *infra.* Similar considerations persuade us that, from an objective viewpoint, society would not consider an expectation of privacy in baggage surrendered for inspection as reasonable. Whether a person has a legitimate privacy expectation depends on (1) whether the individual has an actual expectation and (2) whether that expectation is "one that society would recognize as objectively reasonable." *Wallace,* 80 Hawai'i at 392–93, 910 P.2d at 705–06 (quoting *State v. Bonnell,* 75 Haw. 124, 139, 856 P.2d 1265, 1273–74 (1993)). It is widely held that persons boarding aircraft have a decreased objective expectation of privacy in their belongings.[7] *See Florida v. Rodriguez,* 469 U.S. 1, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984) (per curiam); *People v. Rincon,* 177 A.D.2d 125, 581 N.Y.S.2d 293, 295 (1992) ("It necessarily follows [from the fact that the government interest in protecting airports justifies a limited search] that when a person with notice of such impending search seeks entry into such a restricted area, he or she relinquishes any reasonable expectation of privacy[.]"); *People v. De Strulle,* 28 Cal.App.3d 477, 104 Cal. Rptr. 639, 641 (1972) ("When the[ ] obvious dangers [of aircraft piracies] are combined with the inherent difficulty of preventing hijackings, an individual's expectation of privacy from questioning or search when boarding an aircraft should not be as high as in other public places." (*citing United States v. Lindsey,* 451 F.2d 701, 703 (3d Cir.1971))).

As to a part of his third point, we cannot accept Petitioner's contention that there was a lack of any "facts in the record below about

---

7. Also, airport searches of passengers' belongings are arguably less scandalous and embarrassing than other police searches because (1) the owner of the luggage searched must "voluntarily come to and enter the search area" and (2) the

frequency of such searches makes the individual whose bags are examined feel that there is less of a stigma attached to the search. *See United States v. Skipwith,* 482 F.2d 1272, 1275–76 (5th Cir.1973).

prior notice to Hawaii's travelers" that they would be subject to searches. The security procedures conditioning entry to boarding areas and examination of baggage, evident in the record, would have provided prior notice that Petitioner's baggage was subject to search, and Petitioner does not contend otherwise.

In regard to his fourth argument, Petitioner is correct in asserting that the Federal Aviation Administration regulations pertaining to security and screening procedures at airports were not a part of the record. However, these matters were cited by the ICA for the proposition that "Garringer's search of [Petitioner]'s toolbox [is a] governmental search for purposes of article I, [section] 7 of the Hawai'i Constitution, as well as the fourth amendment." Op. at 81, 34 P.3d at 11. Certainly, the ICA's determination that the search was a "governmental" one did not prejudice Petitioner.

## V.

■ We discuss the crux of Petitioner's third contention with his fifth one because of their relatedness. It is not disputed that Petitioner voluntarily surrendered his toolbox to inspection. Having done so, he consented to the search of the toolbox. Consent may also be implied "from an individual's words, gestures, or conduct." *United States v. Buettner–Janusch,* 646 F.2d 759, 764 (2d Cir.1981); *see also* Lafave, *Search and Seizure* § 8.2(1) (3d ed. 1996) ("Often it is said that . . . consent is 'implied' because it is found to exist merely because of the person's conduct in engaging in a certain activity. . . . [S]ome cases [involve] . . . instances of actual consent being established by circumstantial evidence." (footnotes omitted)). Thus, even in the absence of an express indication, implied consent to an airport security search may be imputed from posted notices. *See United States v. De Angelo,* 584 F.2d 46, 47–48 (4th Cir.1978), *cert. denied,* 440 U.S. 935, 99 S.Ct. 1278, 59 L.Ed.2d 493 (1979) (assert-

ing that implied consent is deduced from existence of signs at airports revealing that luggage would be subject to x-ray inspection); *United States v. Freeland,* 562 F.2d 383, 384 (6th Cir.1977), *cert. denied,* 434 U.S. 957, 98 S.Ct. 484, 54 L.Ed.2d 315 (holding that passenger consented to search of baggage because of sign advising that checked bags would be examined); *Pulido–Baquerizo,* 800 F.2d at 901; *United States v. Doran,* 482 F.2d 929, 931 (9th Cir.1973) (determining that passenger impliedly consented to search because of signs and announcements declaring that all passengers were subject to search); *State v. White,* 26 Ariz.App. 505, 549 P.2d 600, 606 (Ariz.1976) (finding that defendant consented to search because of signs informing him of search).

■ Such implied consent may also be imputed from the nature of airport security measures. *See Pulido–Baquerizo,* (holding that "those passengers placing luggage on an x-ray machine's conveyor belt for airplane travel at a secured boarding area impliedly consent to a visual inspection and limited hand search of their luggage if the x-ray scan is inconclusive in determining whether the luggage contains weapons or other dangerous objects."); *Shapiro v. State,* 390 So.2d 344, 347 (Fla.1980), *cert. denied,* 450 U.S. 982, 101 S.Ct. 1519, 67 L.Ed.2d 818 (1981) (concluding that "[o]ne who enters the boarding area of the airport knows or should know that he [or she] is subject to being searched for weapons" and therefore defendant impliedly consented to search); *People v. Brown,* 113 A.D.2d 893, 894, 493 N.Y.S.2d 810, (1985) (deciding that prosecution need not demonstrate defendant's knowledge of a right to refuse x-ray search because, given the common awareness of such security measures in airports, logical conclusion is that defendant voluntarily consented to such a search); *but see United States v. Kroll,* 481 F.2d 884 (8th Cir.1973); *United States v. Albarado,* 495 F.2d 799 (2d Cir.1974); *State v. Salit,* 613 P.2d 245 (Alaska 1980).[8]

---

8. This court and other jurisdictions have applied implied consent analysis to other situations where public policy demands heightened security. *See State v. Martinez,* 59 Haw. 366, 370, 580 P.2d 1282, 1285 (1978) (determining that defen-

dant, aware of prison policies requiring strip searches of visitors, impliedly consented to strip search); *Clark v. State,* 395 So.2d 525, 529 (Fla. 1981) (deciding that defendant impliedly consented to search at prison where he worked

■ As the court determined, consent is an exception to and dispenses with the requirement of a warrant. *See, e.g., Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) ("It is ... well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." (citations omitted)); *State v. Snitkin,* 67 Haw. 168, 172, 681 P.2d 980, 984 (1984) ("We emphasize that, absent exigent circumstances, consent, or some other well-established warrant exception, a valid search warrant is still required to open private containers[.]"); *State v. Patterson,* 58 Haw. 462, 467, 571 P.2d 745, 748 (1977) ("One of the specific exceptions to the requirements of both a warrant and probable cause is a search conducted pursuant to consent." (Citation omitted.)); *State v. Texeira,* 50 Haw. 138, 140, 433 P.2d 593, 596 (1967) ("Under the federal standard, applicable to the states, a search is reasonable only if it is made pursuant to a valid search warrant, or if it is with the consent of the person searched[.]" (Citation omitted.)).

■ Petitioner's contention, however, is that in the absence of his "voluntary and uncoerced consent," a warrant was required for a further search of the containers within the toolbox. That contention implicates the reasonable scope of the search to which consent had been given. Plainly, the surrender of one's effects at airport security checkpoints is to allow inspection of such effects for contents that may pose a danger to those on the aircraft. The inspection of surrendered effects amounts to a search. *See Terry v. Ohio,* 392 U.S. 1, 17 n. 15, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (defining searches governed by the fourth amendment as "all intrusions by agents of the public upon personal security"). Under our constitutions, the scope of a search must be reasonably related to its purpose. *See Nakamoto,* 64 Haw. at 24, 635 P.2d at 953; *see also In re Doe,* 77

Hawai'i 435, 443, 887 P.2d 645, 653 (1994) (principal's search of minor's purse for marijuana "was reasonably related to the objective, which was to find evidence of marijuana use"); *State v. Ortiz,* 67 Haw. 181, 184, 683 P.2d 822, 826 (1984) (after legitimately seizing a knapsack and feeling what the officer thought was a gun, subsequent protective search was not unreasonable); *United States v. Moore,* 235 F.3d 700 (1st Cir.2000) (requesting that defendant reveal small plastic bag containing heroin, which was concealed in his closed hand, was within the scope of the initial stop, due to the location of the search and the fact that the defendant could have been concealing a gun); *Thomas v. Newsome,* 821 F.2d 1550, 1554 (11th Cir. 1987) (the scope of a search was reasonably related to its purpose when the police officer, while conducting a license check, observed the defendant attempting to conceal something under the seat of his car).

Because the purpose of a security inspection can only be effectuated if the items subject to search can be identified, searches of such belongings must reasonably extend to those containers whose contents cannot be discerned. Accordingly, on facts similar to the instant case, courts have treated the search of receptacles as falling within the scope of a luggage search. In *Santiago v. State,* 50 Md.App. 20, 435 A.2d 499 (1981), the appellate court determined that a security agent's search of a box within some luggage was reasonable under the fourth amendment. It held that,

[s]ince the detection of ... deadly, but easily concealable, substances is the very rationale for the search to begin with— that which makes ... the initial intrusion reasonable—*it necessarily follows that the search may properly continue into packages and containers, such as the box in*

because he was aware of routine prison procedures); *State v. Rexroat,* 266 Kan. 50, 966 P.2d 666, 671 (1998) (holding that defendant consented to limited search where he triggered metal detector through which everyone entering courthouse passed); *People v. Whisnant,* 103 Mich. App. 772, 303 N.W.2d 887, 891 (1981) (deciding that defendant impliedly consented to pat-down

search before entering prison because she did not object to guard's "shake down" and signs posted indicated search policy); *State v. Brownlie,* 149 Or.App. 58, 941 P.2d 1069, 1071 (1997) (holding that defendant "impliedly consented to x-ray screening search" of her purse where she plac[ed] her purse on the [x-ray] conveyor[.] ).

*question, which cannot otherwise be clearly identified as harmless.*

*Id.* at 502–03 (emphasis added).

Considering its purpose, the scope of the airport checkpoint security search may reasonably extend to the indiscernible contents of any containers in luggage. The reach of·such a search is reasonably tailored to protect against "the magnitude and pervasiveness of the danger" to aircraft occupants that is the governmental objective of airport searches.[9] *Nakamoto,* 64 Haw. at 24, 635 P.2d at 953. The degree to which Petitioner was subject to search is "commensurate with the extent and nature of [that] threatened harm[.]" *Id.* at 25, 635 P.2d at 953. In light of our discussion, this case does not require an extension of rights under the independent aegis of our state constitution as contended by Petitioner in his last point.

## VI.

For the foregoing reasons, we affirm the ICA's May 14, 2001 opinion vacating the district court's August 26, 1999 "Findings of Fact, Conclusions of Law and Order Granting Defendant Hanson's Motion to Suppress Evidence, Filed July 9, 1999" and remanding the case to the court.

---

9. California and the Ninth Circuit have determined that airport searches are "administrative searches." According to the California Supreme Court,

> searches conducted as part of a general regulatory scheme in furtherance of an administrative purpose, rather than as part of a criminal investigation to secure evidence of crime, may be permissible under the Fourth Amendment though not supported by a showing of probable cause directed to a particular place or person to be searched.

*People v. Hyde,* 12 Cal.3d 158, 115 Cal.Rptr. 358, 362, 524 P.2d 830, 834 (1974) (citations omitted); *see also United States v. Bulacan,* 156 F.3d 963 (9th Cir.1998). Under the administrative search doctrine, the scope of the search must also relate to the purpose for the agency's intrusion. *See id.* at 967 ("While administrative searches are an exception to the Fourth Amendment's warrant requirement, they are not an exception to the Fourth Amendment's standard of reasonableness." (citation omitted)); *Commonwealth v. Harris,* 383 Mass. 655, 421 N.E.2d 447, 448 (1981) ("The [administrative] search must be limited and no more intrusive than necessary to protect against the danger to be avoided, but nevertheless reasonably effective to discover the materials sought. The inspection must be conducted for a purpose other than the gathering of evidence for criminal prosecutions." (citation omitted)).