LAW LIBRARY

**NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

NO. 29063

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellant, v.
ROBERT M. MANZANO-HILL, Defendant-Appellee

APPEAL FROM THE DISTRICT COURT OF THE THIRD CIRCUIT
NORTH AND SOUTH HILO DIVISION
(CASE NO. 3P2-06-1632; POLICE REPORT NO. C06037067)

MEMORANDUM OPINION
(By: Nakamura, C.J., Fujise and Leonard, JJ.)

Defendant-Appellee Robert M. Manzano-Hill (Manzano-Hill or Defendant) was charged with promoting a detrimental drug in the third degree after a search by airport security uncovered marijuana in his luggage. Manzano-Hill moved to suppress evidence obtained as a result of the search of his luggage and his subsequent arrest. On Februray 13, 2008, the District Court of the Third Circuit (district court)[1] issued an order granting Manzano-Hill's motion to suppress evidence (Suppression Order).

Plaintiff-Appellant State of Hawai'i (State) appeals from the Suppression Order. As explained in greater detail below, we conclude that regardless of whether the findings of fact and conclusions of law issued by the district court in support of the Suppression Order are correct, an issue we do not address, they do not provide a valid basis for suppressing evidence. Accordingly, we vacate the Suppression Order and remand the case for further proceedings consistent with our Memorandum Opinion. In doing so, we express no view on the merits of the parties' conflicting interpretation of the medical-use-of-marijuana law, codified in Hawaii Revised Statutes (HRS) Chapter 329, Part IX.

I.

To provide a background context for this case, it is helpful to review certain provisions of the medical-use-of-

---

[1] The Honorable Barbara T. Takase presided.

marijuana law, which was enacted in 2000.  2000 Haw. Sess. Laws Act 228 at 595-600.  HRS § 329-125 (Supp. 2009) provides an affirmative defense to marijuana-related crimes.  Under HRS § 329-125, "[a] qualifying patient or the primary caregiver may assert the medical use of marijuana as an affirmative defense to any prosecution involving marijuana under this [part] or chapter 712; provided that the qualifying patient or the primary caregiver strictly complied with the requirements of this part." (Brackets in original).

As used in the medical-use-of-marijuana law, the term "qualifying patient," is defined as "a person who has been diagnosed by a physician as having a debilitating medical condition[,]" and the term "primary caregiver" is defined as "a person, other than the qualifying patient and the qualifying patient's physician, who is eighteen years of age or older who has agreed to undertake responsibility for managing the well-being of the qualifying patient with respect to the medical use of marijuana."  HRS § 329-121 (Supp. 2009).  The term "medical use" is defined to mean

> the acquisition, possession, cultivation, use, distribution, or transportation of marijuana or paraphernalia relating to the administration of marijuana to alleviate the symptoms or effects of a qualifying patient's debilitating medical condition.  For the purposes of "medical use", the term distribution is limited to the transfer of marijuana and paraphernalia from the primary caregiver to the qualifying patient.

Id. (emphasis added).

HRS § 329-122 (Supp. 2009) contains a number of conditions for the permitted medical use of marijuana.  The condition disputed by the parties in this case is set forth in HRS § 329-122(c)(2)(E).  HRS § 329-122 provides, in relevant part:

> **Medical use of marijuana; conditions of use.** (a) Notwithstanding any law to the contrary, the medical use of marijuana by a qualifying patient shall be permitted only if:
>
> (1)  The qualifying patient has been diagnosed by a physician as having a debilitating medical condition;
>
> (2)  The qualifying patient's physician has certified in writing that, in the physician's professional

2

opinion, the potential benefits of the medical use of marijuana would likely outweigh the health risks for the particular qualifying patient; and

(3)     The amount of marijuana does not exceed an adequate supply.

    . . . .

(c)     <u>The authorization for the medical use of marijuana in this section shall not apply to</u>:

(1)     The medical use of marijuana that endangers the health or well-being of another person;

(2)     The medical use of marijuana:

(A)     In a school bus, public bus, or any moving vehicle;

(B)     In the workplace of one's employment;

(C)     On any school grounds;

(D)     At any public park, public beach, public recreation center, recreation or youth center; or

(E)     <u>Other place open to the public</u>; and

(3)     The use of marijuana by a qualifying patient, parent, or primary caregiver for purposes other than medical use permitted by this part.

(Emphases added.)

II.

A.

Prior to trial, Manzano-Hill filed two motions:  1) a Motion to Dismiss the case and 2) a Motion to Suppress Evidence (Suppression Motion).  According to the declaration of counsel submitted by Manzano-Hill in both motions, the relevant facts were as follows:

1.     On November 27, 2006 the Defendant was traveling within the State of Hawaii.  At the Hilo Airport his baggage was selected for a "secondary" search.  Within his enclosed baggage a can of macadamia nuts was located.  The searching officer felt the can was too light, and while shaking it it did not rattle like a can of nuts would.  The can was opened, and a leafy green substance was located.

2.     The green substance was field tested, and was found to be Marijuana.

3.     The Defendant is a licensed caregiver for the use of medicinal marijuana, and is also a licensed medical

marijuana user.  As such, he had a legal right to the
marijuana, and the marijuana was not contraband.

In the memorandum of law in support of the Motion to
Dismiss, Manzano-Hill asserted that "[t]he State acknowledges
that [Manzano-Hill] had a legal right to the marijuana in his
possession, both as a licensed medical marijuana cardholder, as
well as being a licensed caregiver."  Manzano-Hill argued that
HRS § 329-122(c)(2)(E) only applies to prohibit a licenced
medical marijuana user from actually using, in other words
smoking, marijuana in a public place.  He claimed that because he
was not smoking the marijuana at the airport, his possession of
the marijuana was lawful and the prosecution should be dismissed.

In his memorandum of law in support of the Suppression
Motion, Manzano-Hill argued that warrantless search of the
macadamia nut can containing the marijuana was illegal and that
there was no probable cause for his arrest.  He therefore claimed
that any evidence seized and the post-arrest statements he made
should be suppressed.  Defendant's Suppression Motion does not
identify the substance of the post-arrest statement that he
purportedly made.

The State opposed both motions.  In opposition to the
Motion to Dismiss, the State argued that HRS § 329-122(c)(2)(E)
and the definition of "medical use" set forth in HRS § 329-121
clearly prohibit a person who possesses a valid medical marijuana
license from possessing or transporting marijuana in places open
to the public.  The State therefore asserted that Manzano-Hill's
medical marijuana license did not provide a defense to the
charged marijuana-possession offense.  In opposition to
Defendant's Suppression Motion, the State contended that under
State v. Hanson, 97 Hawai'i 71, 34 P.3d 1 (2001), the search by
airport security which led to the discovery of the marijuana was
a valid search, and thus the marijuana was not subject to
suppression.

B.

The district court held a hearing, apparently on both
motions.  No evidence was presented by either party at the
hearing.  At the beginning of the hearing, the district court

4

asked Manzano-Hill's counsel if he had "[a]ny other arguments." Manzano-Hill's counsel responded, "No, Your Honor, I think what's in the motion, that he has a medical marijuana permits card and he was traveling as he's lawfully entitled to, I don't think we need to add anything more to that." The State responded that although Defendant "does have" a medical marijuana permit, the law does not allow marijuana to be in an airport because it is an area open to the public.

The parties then engaged in argument over the proper interpretation of HRS § 329-122(c)(2)(E). Manzano-Hill's counsel argued that notwithstanding the statutory definition of "medical use," which includes the acquisition, possession, cultivation, use, distribution, or transportation of marijuana, the term "medical use" for purposes of HRS § 329-122(c)(2) should be limited to the actual use (i.e., smoking) of marijuana. Manzano-Hill's counsel argued that reading "medical use" for purposes of HRS § 329-122(c)(2) according to its broad statutory definition would nullify the medical-use-of-marijuana law and lead to absurd results. Such an interpretation would make it extremely difficult for a medical marijuana qualifying patient to acquire and use marijuana because HRS § 329-122(c)(2)(E) would then prohibit the transportation or possession of marijuana in a place open to the public.

The State contended that HRS § 329-122(c)(2) should be construed as incorporating the statutory definition of the term "medical use." When HRS § 329-122(c)(2) is construed in this fashion, HRS § 329-122(c)(2)(E) plainly prohibits the transportation or possession of marijuana in a place open to the public, such as an airport. The State acknowledged that its interpretation of HRS § 329-122(c)(2)(E) would restrict qualifying patients' access to marijuana, but claimed its interpretation would not eliminate such access.

The circuit court orally ruled as follows:

> Well, I think there is ambiguity in the . . . statute itself in the definition of "medical use", that appears to be incongruous with the section that the State is citing, [HRS §] 329-122(C)(2), I guess . . . [be]cause on the one hand medical use includes transportation of marijuana . . . and . . . on the other hand . . . it does appear as if . . .

> [HRS §] 329-122(C)(2) is or should be when they are actually using it and not necessarily transporting it. Those are places where use of marijuana would be prohibited. And based on that I'm going to grant the defendant's motion to . . . suppress. This is a motion to suppress, so --

At that point, Manzano-Hill's counsel advised the district court that both the Suppression Motion and Motion to Dismiss were pending before the court. The district court made clear, however, that it was only granting the Suppression Motion, stating, "I am granting [Manzano-Hill's] motion to suppress, not to dismiss but to suppress at this time."

### C.

On February 13, 2008, the district court issued its written Suppression Order. The Suppression Order states, in relevant part:

#### FINDINGS OF FACT

1. On November 27, 2006, Defendant, ROBERT MANZANO-HILL, possessed marijuana within his luggage and attempted to transport it through the Hilo International Airport.

2. Defendant also possessed a valid medical marijuana card at the time of his arrest.

#### CONCLUSIONS OF LAW

1. That there is ambiguity in the statute regarding the definition of "medical use."

2. That Hawaii Revised Statutes § 329-122(C)(2) should not apply when someone is transporting marijuana but only when someone is actually using it.

The district court did not enter a written order regarding Manzano-Hill's Motion to Dismiss.

### III.

On appeal, the State argues that the district court erred in concluding that: 1) there is ambiguity in the definition of "medical use" in the medical-use-of-marijuana law; and 2) the limitations set forth in HRS § 329-122(c)(2) should only apply when someone is actually using marijuana. The State asserts that HRS § 329-122(c)(2) should be construed as incorporating the statutory definition of the term "medical use," which includes

"the acquisition, possession, cultivation, use, distribution, or transportation of marijuana." HRS § 329-121.

Manzano-Hill's main argument in his answering brief is that "[t]his case must be remanded for a redetermination of the [Suppression Motion] because the lower court failed to place its 'essential' findings on the record and because the [Suppression] [O]rder was based on a misinterpretation of the legal bases for suppressing the evidence." Alternatively, Manzano-Hill asserts that assuming arguendo that this court declines to remand the case, we should affirm the Suppression Order based on the existing record. Manzano-Hill also separately argues that the district court "correctly interpreted HRS § 329-122 as allowing the transportation of marijuana in public areas." He concedes, however, that the district court's conclusions of law interpreting HRS § 329-122(c)(2) are "not the proper basis for the granting of a motion to suppress the evidence" and that the district court's "interpretation of the 'ambiguity' in the term medical use has no relevance to the instant appeal."

We agree with the main argument in Manzano-Hill's answering brief that this case must be remanded for redetermination of his Suppression Motion. The district court's findings of fact and conclusions of law do not provide a valid basis for the Suppression Order. It appears that the district court relied on the grounds asserted in Manzano-Hill's Motion to Dismiss to grant Manzano-Hill's Suppression Motion. In doing so, the district court explicitly stated that it was only granting Manzano-Hill's Suppression Motion and not his Motion to Dismiss. The district court's interpretation of HRS § 329-122(c)(2) is relevant to determining the scope of the affirmative defense to marijuana-related prosecutions provided by the medical-use-of-marijuana law. But, the district court's interpretation of HRS § 329-122(c)(2) does not provide a basis for suppressing evidence.

In support of his Suppression Motion, Manzano-Hill contended that the opening of his macadamia nut can by an airport security officer without a valid search warrant was an illegal search. The State countered that the search of the can was valid pursuant to the Hawai'i Supreme Court's decision in Hanson, 97

Hawai'i 71, 34 P.3d 1. No evidence was presented at the hearing regarding the circumstances surrounding the search of the macadamia nut can. Nor did the district court's findings of fact or conclusions of law address any of the arguments raised by the parties concerning the Suppression Motion.

We vacate the Suppression Order. On remand, the district court may permit the parties to introduce evidence on Manzano-Hill's Suppression Motion before entering a ruling on the Suppression Motion. The district court may also receive evidence on Manzano-Hill's Motion to Dismiss and enter findings and conclusions with respect to that motion. We reject Manzano-Hill's alternative argument that this court should affirm the Suppression Order based on the existing record.

IV.

We vacate the Suppression Order and remand the case for further proceedings consistent with this Memorandum Opinion.

DATED: Honolulu, Hawai'i, January 27, 2010.

Kevin S. Hashizaki,
Deputy Prosecuting Attorney,
County of Hawai'i
for Plaintiff-Appellant.

Theresa Marshall,
Deputy Public Defender
(Jon N. Ikenaga,
Deputy Public Defender,
with her on the briefs)
for Defendant-Appellee.

_Craig H. Nakamura_
Chief Judge

_Alexa D.M. Fujise_
Associate Judge

Associate Judge