**Electronically Filed
Intermediate Court of Appeals
CAAP-24-0000018
27-NOV-2024
08:18 AM
Dkt. 43 SO**

NO. CAAP-24-0000018

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellant,
v.
JULIA LEILANI KAULUKUKUI, Defendant-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CPC-22-0001105)

SUMMARY DISPOSITION ORDER
(By: Wadsworth, Presiding Judge, Nakasone and McCullen, JJ.)

This appeal arises out of an order suppressing evidence of Ziploc bags containing a methamphetamine-like substance recovered during an airport administrative search conducted by a Transportation Security Administration (**TSA**) agent, for which Defendant-Appellee Julia Leilani Kaulukukui

(**Kaulukukui**) was charged with first-degree promotion of a dangerous drug.  We vacate and remand.

Plaintiff-Appellant State of Hawaiʻi (**State**) appeals from the December 13, 2023 "Findings of Fact [(**FOFs**)], Conclusions of Law [(**COLs**)] and Order Granting [Kaulukukui]'s Motion to Suppress Evidence" (**Suppression Order**); and December 14, 2023 "Order Granting [Kaulukukui]'s Oral Motion to Dismiss" (**Dismissal Order**),[1] both filed by the Circuit Court of the First Circuit (**Circuit Court**).[2]

On appeal, the State contends the Circuit Court erred by:  **(1)** failing to make certain factual findings of the observations by the TSA baggage screening agent Lauricia Ota-Tuamoheloa (**Agent Ota-Tuamoheloa**) and the TSA baggage search agent Samuel Galang, Jr. (**Agent Galang**) that were supported by the evidence; and "clearly erred in finding that Agent Galang 'knew the substance in the two Ziploc bags [was] not related to the safety of the aircraft'"; and **(2)** "concluding that Agent Galang's search and seizure of the zip lock [sic] bags went beyond the scope of an airport administrative search for weapons and/or[]explosives, and thus was illegal."  (Cleaned up.)

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised, we resolve the contentions as follows.

On August 31, 2022, the State charged Kaulukukui with one count of Promoting a Dangerous Drug in the First Degree.

---

[1]     The State does not present argument on the Dismissal Order, and we do not address it.  See Hawaiʻi Rules of Appellate Procedure Rule 28(b)(7).

[2]     The Honorable Clarissa Y. Malinao presided.

On October 10, 2023, Kaulukukui filed a "Motion to Suppress All Evidence" (**Motion to Suppress**), arguing, inter alia, that while a TSA agent may "look for weapons and explosives" in an administrative search, the search in this case exceeded its permissible scope, where the substance in the Ziploc bags was "clearly neither a weapon nor an explosive." Kaulukukui asserted that "all evidence seized pursuant to the search of [her] person and property must be suppressed because it was seized in violation of her Fourth Amendment rights." The State's November 22, 2023 opposition argued that the evidence was "recovered during [a] legal administrative search"; and that "[a]t the time of the search, the substance in the bags had not been deemed safe or cleared as an explosive or dangerous object."

The following testimony was adduced at the hearing on the Motion to Suppress conducted on November 29 and December 1, 2023.

Agent Ota-Tuamoheloa testified that on August 25, 2022, she was stationed at the Honolulu International Airport as a TSA "X-ray operator" screening baggage. She was tasked to "look for any contraband or any prohibited items that may come to the checkpoint," such as "guns, knives, [and] any [improvised explosive device (**IED**)] components."[3] At 5:45 a.m., Agent Ota-Tuamoheloa noticed an "organic and inorganic mass" on the "X-ray machine," with a "green and orangelike tinge to it." She pulled the bag to a side area onto the "manual diverted rolling belt,"

---

[3] Agent Ota-Tuamoheloa testified that "IED" stood for "[i]nitiator" explosive device; however, the Department of Homeland Security defines "IED" as "improvised explosive device." Improvised Explosive Devices (IEDs), U.S. Department of Homeland Security, https://www.dhs.gov/topic/explosives (last visited Nov. 25, 2024).

for the baggage search agent, Agent Galang, to take a closer look.  The item "raised [her] suspicion[,]" as "it could [have been] a component of an IED" because "it [did not] look like every day items."  As Agent Ota-Tuamoheloa continued to operate the X-ray machine, she observed a "commotion" and noticed that others were "trying to find the passenger that owned the bag" because the passenger "left," and others "were trying to call [the passenger] back."  Agent Ota-Tuamoheloa testified that her job required her to search for "dangerous items," and that if she came across other "prohibited items like drug[s] or contraband," she had "to notify law enforcement."  Later, when Agent Ota-Tuamoheloa walked past the bag in question during a shift rotation, she observed "crystals and white powder."  Agent Ota-Tuamoheloa testified that:  in her experience, she had frequently seen other passengers bring Hawaiian salt on to planes; the Hawaiian salt was not in a Ziploc bag and was "usually in that bag themselves [sic] with the label on it"; and "Hawaiian salts are usually very inorganic" and appear "very green on [the X-ray] screen."  She noted that "this mass" in the tagged bag "had more orange in it[,]" "like a mixture of . . . something organic and something inorganic[,]" and "[t]hat's why [she] suspected it."

Agent Galang testified that on August 25, 2022, he was on duty as the TSA "property search agent" at the airport.  Agent Galang's role was to "check bags that [were] on queue that [were] pulled out by the X-ray operator."  Agent Galang was tasked to check for "[t]hreats to aviation like bombs and explosives[,]" "anything that the X-ray operator may have tagged[,]" and "items that [were] threats, [such as] knives."  When a bag comes into the queue line for a baggage search, Agent

4

Galang's first step is to "identify who the owner of the bag is." Agent Galang testified that at around 5:45 a.m., a "black roller bag" came through for a search. Agent Galang called for the owner of the bag, and Kaulukukui identified herself as the owner. Agent Galang explained that prior to searching the bag, he looked at the X-ray screen to see which items the "X-ray operator tagged [] inside the bag" for him "to check." Agent Galang searched the "tagged items" within the bag, and found "rolled . . . jeans" containing "crystalline substances" inside two "Ziploc bags." Agent Galang "did not know what they were." While the first Ziploc bag could have contained "regular salt," the second bag was "different," with "larger crystals, crystalline substances," which "look[ed] like . . . a threat" and could have been "ingredients to explosives." When asked whether he suspected the substances could be illegal drugs, Agent Galang testified, "No, I didn't even think it was illegal drugs." While Agent Galang conducted a test for explosives on the first Ziploc bag that came back as negative, he testified the test was "not 100 percent" accurate, and he still had safety concerns because he was "not sure what the . . . substance was." Agent Galang explained he then called for a supervisor because "[t]he second bag ha[d] []bigger lumps," and he "needed help [] from a supervisor"; he was "not sure whether it was a threat or not"; and Kaulukukui began "exhibiting signs" requiring him "to call for a supervisor." While Agent Galang was waiting for the supervisor, Kaulukukui "ran to the door." The supervisor arrived and called law enforcement.

State of Hawaiʻi Deputy Sheriff Efren Bayongan, Jr. (**Sheriff Bayongan**) testified that on August 25, 2022 at 6:03 a.m., he was on duty at the airport when he was dispatched to

the Terminal 1 checkpoint for a "reported found substance by TSA." Sheriff Bayongan testified that it is standard practice for TSA to call when they are unclear about what an item is. When asked whether the TSA agents who had called knew what the substance was, the sheriff replied, "No . . . they weren't really sure." When Sheriff Bayongan arrived, he observed an "open carry-on" and "two clear . . . Ziploc bags" with an "unknown substance inside." Sheriff Bayongan "quick[ly]" recognized that the "white crystalline substances [] appeared to be crystal methamphetamine" from his "training in the academy." Sheriff Bayongan testified that while the substance could have been Hawaiian salt, he "felt confident" that it was crystal methamphetamine "from the looks of it [sic]." Sheriff Bayongan collected the two bags as evidence, identified Kaulukukui as the owner of the bag, and arrested Kaulukukui. Sheriff Bayongan testified that the substances were later tested and confirmed to contain methamphetamine.

The Circuit Court orally granted the Motion to Suppress, and subsequently filed its December 13, 2023 Suppression Order containing the following COLs:

> Based on the evidence and testimony provided, the court finds that Agent Galang's search and seizure of the zip lock [sic] bags went beyond the scope of an airport administrative search for weapons and/or explosives, [and] thus was illegal.
>
> . . . .
>
> Here, the need for the administrative search was to look for weapons and explosives. The need to search is justified because the search was conducted to ensure the safety of airline passengers and personnel. *United States v. McCarty,* 648 F.3d 820 (9th Cir. 2011).
>
> However, in this case the search went too far. The two baggies found were clearly neither a weapon nor an explosive. [Agent] Galang tested one of the bags and found no explosives or danger. Indeed, <u>Agent Galang admitted that</u>

he did not know what the zip lock [sic] bags contained. [Agent] Galang is not law enforcement and therefore, it is not his job to attempt to determine if what he found while searching through a passenger's luggage is or is not evidence of a crime.

Here, the search clearly went beyond the scope of a legal warrantless administrative search and therefore, was unreasonable. Kaulukukui had a privacy interest in her luggage. The baggies found were not immediately identifiable as illegal contraband. TSA Agent Galang blatantly violated Kaulukukui's privacy when he detained the baggies even though he knew they were not related to the safety of the aircraft. *See Horton v. California,* 496 U.S. 128, 137 (1990) (To justify seizure, the incriminating object must be immediately apparent to its viewer). [Agent] Galang readily admitted "I was not sure what the substance in her bag was." Thus, the items discovered and seized were the product of an unlawful search.

(Emphases added.)

The Circuit Court's subsequent December 14, 2023 Dismissal Order reflected that the State "indicated that it would not be able to proceed to trial" due to the suppression of the seized evidence.

The State timely appealed.

**(1)** The State argues that, while the Suppression Order contained a finding that Agent Ota-Tuamoheloa "saw what appeared to be a mass with green and orange tinge[,]" the Circuit Court erroneously omitted the agent's accompanying testimony explaining the usual "green" color of Hawaiian salt and its customary packaging not in Ziploc bags. The State also asserts error based on the Circuit Court's failure to include findings regarding Kaulukukui's attempt to flee when the two Ziploc bags were discovered. Finally, the State argues that the COL (which is actually an FOF),[4] that Agent Galang "detained the baggies

---

[4]     Whether a determination is an FOF or COL is a question of law, and the accuracy of the label is freely reviewable by an appellate court. Kilauea Neighborhood Ass'n v. Land Use Comm'n of State of Haw., 7 Haw. App. 227, 229, 751 P.2d 1031, 1034 (1988).

even though he knew they were not related to the safety of the aircraft[,]" was erroneous because it was "not supported by any other [FOFs]" or "by the evidence adduced at the hearing." The State's last argument has merit.

The State cites no authority, nor are we aware of any, to support its argument that error on appeal can be predicated on the lack of particular details in a trial court's factual findings. See State v. Ramos-Saunders, 135 Hawai'i 299, 304-05, 349 P.3d 406, 411-12 (App. 2015) ("The trial judge is required to only make brief, definite, pertinent findings and conclusions upon the contested matters; there is no necessity for over-elaboration of detail or particularization of facts." (citation omitted)). The Circuit Court was not required to include the particular details desired by the State in its FOFs.

"Pretrial findings of fact are reviewed under the clearly erroneous standard. A finding of fact is clearly erroneous when . . . the record lacks substantial evidence to support the finding . . . ." State v. Quiday, 141 Hawai'i 116, 121, 405 P.3d 552, 557 (2017) (cleaned up).

Here, the Circuit Court found that Agent Galang "admitted" that he "'was not sure what the substance in [Kaulukukui's] bag was'"; and Agent Galang "detained the baggies even though he knew they were not related to the safety of the aircraft." The record supports the first finding that Agent Galang did not know what the substance was, and does not support the latter finding that he "knew" that the substance he could not identify was not a safety threat. Agent Galang testified that he had safety concerns even after testing the first Ziploc bag; the substance in the second bag appeared "different," with "larger crystals"; and he called for a supervisor because he

could not determine whether the substance was a "threat." The Circuit Court did not reject Agent Galang's credibility. See State v. Jenkins, 93 Hawaiʻi 87, 103-04, 997 P.2d 13, 29-30 (2000) (explaining that in reviewing a motion to suppress, "the credibility of witnesses falls within the province of the trier of fact, and should not be second-guessed by this court" (internal citation omitted)). There was no substantial evidence supporting the finding that Agent Galang "knew" that the unknown substances in the bags "were not related" to aircraft safety. See Quiday, 141 Hawaiʻi at 121, 405 P.3d at 557. Rather, the record reflects that Agent Galang was still trying to determine whether or not the substances were a threat. Thus, we conclude the Circuit Court's finding that Agent Galang "knew" that the substances in the Ziploc bags were unrelated to aircraft safety, was clearly erroneous. See id.

**(2)** The State argues the Circuit Court erred in concluding that Agent Galang's search and seizure of the Ziploc bags went beyond the scope of a constitutionally permissible airport administrative search. The State argues that Agent Galang was "not able to confirm that the unknown substance in [the] two clear Ziploc bags were [sic] explosives," and that "further investigation was necessary before deciding what to do." The State contends that "it would be irresponsible to allow the two clear Ziploc bags into the secured area without verification that they were not a safety threat[,]" citing U.S. v. Aukai, 497 F.3d 955, 960-61 (9th Cir. 2007);[5] and that

---

[5]    In Aukai, the TSA agent called law enforcement and searched the defendant's front pocket, after the defendant attempted to leave the secured area by choosing to not board the plane after a handheld magnetometer was "triggered" by an unknown object in his pocket. 497 F.3d at 957-58. The Ninth Circuit held that the search was reasonable under the circumstances to

"[c]ommon sense dictates that TSA agents should have the authority to make reasonable inquiries with . . . law enforcement officers, to confirm or dispel suspicions about unknown items found in valid airport security checks."

Kaulukukui argues that "the administrative search's objective" was limited "to detect weapons and explosives[.]" Citing U.S. v. McCarty, 648 F.3d 820 (9th Cir. 2011),[6] Kaulukukui argues that "the extent of the search was clearly excessive" because the Ziploc bags contained "neither weapons nor explosives," and the search was not "aimed to ensure the security of airline passengers and staff."

"A trial court's ruling on a motion to suppress evidence is reviewed *de novo* to determine whether the ruling was 'right' or 'wrong.'" State v. Kaleohano, 99 Hawaiʻi 370, 375, 56 P.3d 138, 143 (2002) (citation omitted). A trial court's COLs are also reviewed under the same standard. Id.

In State v. Hanson, the Hawaiʻi Supreme Court stated, "warrantless searches at airport security checkpoints do not offend either the fourth amendment or the Hawaiʻi Constitution." 97 Hawaiʻi 71, 74, 34 P.3d 1, 4 (2001) (citing Nakamoto v. Fasi, 64 Haw. 17, 24, 635 P.2d 946, 953 (1981)). The supreme court

rule out the presence of weapons or explosives. Id. at 960-62. The court explained that allowing the defendant to leave the secured area without going through the airport screening process "would [] allow terrorists a low-cost method of detecting systematic vulnerabilities in airport security, knowledge that could be extremely valuable in planning future attacks." Id. at 961.

[6]    In McCarty, the TSA agent flagged the defendant's bag for a dark mass and began to search the bag, during which photographs of child pornography were revealed. 648 F.3d at 825-26. The TSA agent testified that the dark mass could have been the photographs, and she checked the photographs for possible hidden sheet explosives. Id. The Ninth Circuit held the administrative search was valid for the timeframe during which the TSA agent was viewing the photographs to search for explosives. Id. 831-38.

recognized "[i]t is widely held that persons boarding aircraft have a decreased objective expectation of privacy in their belongings." Id. (citations omitted). "Plainly, the surrender of one's effects at airport security checkpoints is to allow inspection of such effects for contents that may pose a danger to those on the aircraft." Id. at 76, 34 P.3d at 6 (citation omitted).

Because the purpose of such airport security searches is to detect "deadly, but easily concealable, substances," the Hanson court explained that such purpose "can only be effectuated if the items subject to search can be identified[.]" Id. (citation omitted). Hanson involved a Honolulu Airport security search of the defendant's luggage, where an X-ray machine was unable to identify all of the contents of a wooden toolbox. Id. at 72, 34 P.3d at 2. The defendant opened the toolbox to allow the airport security officer to search it, and "[i]n the box was a tan plastic bag wrapped in duct tape[,] but the bag's contents could not be identified." Id. The security officer "opened the plastic bag and discovered a second plastic bag containing a white cardboard box[,]" which contained a handgun inside. Id. The supreme court affirmed this court's reversal of the order suppressing evidence of the gun, holding that the scope of airport security searches may "reasonably extend" to items in luggage that are "indiscernible" or unidentifiable in light of the magnitude of danger to aircraft occupants:

> Considering its purpose, the scope of the airport checkpoint security search may reasonably extend to the indiscernible contents of any containers in luggage. The reach of such a search is reasonably tailored to protect against 'the magnitude and pervasiveness of the danger' to aircraft occupants that is the governmental objective of airport searches.

11

Id. at 77, 34 P.3d at 7 (citing Nakamoto, 64 Haw. at 24, 635 P.2d at 953).

Here, Agent Galang's actions were within the reasonable scope of an airport security search, which purpose is to protect against danger to aircraft occupants. See id. The protective purpose of such a search can "only be effectuated if the items subject to search can be identified," id. at 76, 34 P.3d at 6, and Agent Galang was attempting to fulfill that objective when confronted with the unidentified substance in the Ziploc bags. Agent Galang's investigation to determine whether the unknown, indiscernible substance in the Ziploc bags was an ingredient for an IED or an explosive or something else that might pose a threat, was properly cabined to that purpose. See id. The Circuit Court erred in concluding that Agent Galang's investigation of the Ziploc bags containing a substance unknown and indiscernible to him, constituted an illegal search that "went beyond the scope of a legal warrantless administrative search." See Kaleohano, 99 Hawaiʻi at 375, 56 P.3d at 143.

We do not address the State's additional argument regarding application of the plain view doctrine to Sheriff Bayongan's observation, and whether the sheriff had probable cause to arrest. The Circuit Court suppressed the evidence as the fruit of an unlawful search, and did not reach these issues. In light of our ruling upholding the search, the Circuit Court should address these issues on remand.

For the foregoing reasons, we vacate the December 13, 2023 "Findings of Fact, Conclusions of Law and Order Granting Defendant's Motion to Suppress Evidence" and the December 14, 2023 "Order Granting Defendant's Oral Motion to Dismiss," both

filed by the Circuit Court of the First Circuit.  We remand for further proceedings consistent with this Summary Disposition Order.

DATED:  Honolulu, Hawaiʻi, November 27, 2024.

On the briefs:

Brian R. Vincent,
Deputy Prosecuting Attorney
for Plaintiff-Appellant.

William A. Harrison,
for Defendant-Appellee.

/s/ Clyde J. Wadsworth
Presiding Judge

/s/ Karen T. Nakasone
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge